UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

               vs.                                            5:07-CR-387

JOHN MURTARI,

                                Defendant.
_____

RICHARD R. SOUTHWICK, Asst. U.S. Attorney
JOHN MURTARI, Defendant *pro se*

GUSTAVE J. DI BIANCO, Magistrate Judge

## MEMORANDUM DECISION and ORDER

      This defendant has been charged in a 4-count information with violations of the Code of Federal Regulations in conjunction with his activities at the James M. Hanley Federal Building Plaza on August 30 and September 4, 2007.

      Specifically, the Superseding Information dated September 18, 2007 alleges that on August 30 and September 4, 2007, defendant willfully damaged or destroyed property at the James M. Hanley Federal Building by writing on the surface of the plaza on the outside of the building in violation of 41 C.F.R. § 102-74.380(b)(Counts 1 and 3). The defendant is also charged with failure to obey the lawful direction of the Federal Police Officers or other authorized personnel on August 30 and September 4, 2007 by returning to write on the plaza after being told to stop that conduct in violation of 41 C.F.R. § 102-74.385 (Counts 2 and 4).

      The Superseding Information (07-CR-387) merely added Counts 3 and 4 to the original information that was filed on September 4, 2007 and includes the defendant's

conduct of September 4, 2007.

This court held a bench trial on October 3, 2007. At the beginning of the trial, defendant moved to dismiss the charges. The Government opposed the motion, and I reserved on the decision and proceeded to hear all the evidence.

Prior to trial, the parties also discussed the fact that the defendant had additional charges brought against him involving contempt of my previous orders. These charges, however, are the subject of a separate information, and will be handled in a separate trial. The only charges that are the subjects of this trial are contained in **07-CR-387.**

The following constitutes this court's findings of fact, conclusions of law on defendant's motion to dismiss, and verdict in this case.

## FACTS

The first incident in this case occurred on August 30, 2007. The Government produced three witnesses to testify about the events on August 30, 2007: David M. Pontius of Wackenhut Security, the Site Supervisor at the James M. Hanley Federal Building; Jeff A. Berwald, an Inspector for the Federal Protective Service at the James M. Hanley Federal Building; and Jay Burris, the General Services Administration's property manager at the Federal Building.

The testimony of these three individuals showed that on August 30, 2007, defendant came to the Federal Building and wrote on the pavement in chalk. Defendant wrote the words "I ♥ Dom, Sen. Clinton Help Us." Inspector Berwald testified that he specifically told defendant to stop this activity, but when he returned

2

to the plaza 35-40 minutes later, the defendant was again writing on the ground with the chalk. Inspector Berwald stated that he asked defendant whether he had written on the ground "again," and defendant admitted the conduct.

After defendant's admission, Inspector Berwald placed defendant under arrest, issued him summonses for the violations and released him. Inspector Berwald stated that defendant did not ask any questions or state that he did not understand what Inspector Berwald was doing. He did not indicate in any way that he thought that Inspector Berwald's order to cease writing on the pavement was unlawful. Government counsel introduced photographs of the chalk writings,[1] and it is clear that the defendant ***does not deny*** writing the words, either the first time or ***after he was told to stop doing so.***

The second incident in this case occurred on September 4, 2007. The Government produced two witnesses to testify about the September 4, 2007 incident: Dale Mitchell, a Wackenhut Security Officer, stationed at the James M. Hanley Federal Building; and Joseph P. Chapman, an Inspector for the Federal Protective Service.

The testimony of these two witnesses established that on September 4, 2007, defendant returned to the Federal Building and wrote several messages in chalk on the pavement of the Federal plaza. Officer Mitchell testified that at approximately 10:30 a.m. on September 4, 2007, he was informed that someone was writing on the Federal plaza in chalk. Officer Mitchell went outside and observed defendant kneeling on the

---

[1] Government Exhibits 1-5.

3

ground writing with chalk on the pavement. Officer Mitchell spoke to defendant and asked defendant to give him the chalk. Officer Mitchell asked the defendant if he had more chalk, but defendant refused to tell the officer. Officer Mitchell then called Inspector Chapman.

Inspector Chapman testified that at approximately 10:40 a.m. on September 4, 2007, he was advised by building security officers that defendant was writing messages on the pavement in chalk. Inspector Chapman stated that he walked out to the plaza and looked at the messages. The Government introduced photographs of the messages. Officer Chapman was aware of the August 30, 2007 incident, and told defendant that he had already been told not to write on the pavement. Officer Chapman then arrested defendant.

The defendant testified on his own behalf. Again, defendant does *not* contest that he wrote the messages with the chalk, and *he does not deny that he was told to stop doing so*. Defendant concedes that he continued to write messages on August 30 and returned on September 4, 2007 to write more messages to Senator Clinton on the pavement with chalk. Defendant testified that he did not believe that he was doing anything wrong because he had engaged in the same conduct several times in early 2005, and that either nothing was done to stop him, or the charges were dismissed by the court.

Defendant testified that he was cooperative with the officers, gave them the chalk when asked to do so, but specifically declined to tell the officers if he had any more chalk. In closing, defendant stated that there was no damage to the property and

4

no physical alteration of the pavement, thus, he should not be found guilty of any of the charges.

The Government argued that defendant should be found guilty of all charges because defendant clearly disobeyed the officers' orders to stop writing on the pavement and returned to write on the pavement on a second day after having been told not to do so.  The Government argued that the fact that defendant was not arrested or charged each time that he came to the Federal Building and engaged in conduct for which he *could have* been charged, does not indicate that his conduct was authorized or that the Government was estopped from charging him on August 30 and September 4, 2007.  The Government also argued that the court should find that the term "damage" as used in section 102-74.380(b) should be read broadly and encompass anything "diminishing" the area for everyone.

After the trial, the court reserved decision and afforded each party time to submit any additional case law or argument regarding the defendant's motion to dismiss the charges.  Both the Government and defendant have filed additional papers.

## DISCUSSION

This court first finds that there is *overwhelming proof* beyond a reasonable doubt that defendant disobeyed the officers' orders to stop writing on the pavement. Defendant admits to writing, admits that he knew that the officers told him to stop, and admits that he returned to write on the pavement after he had been told to stop on August 30, 2007.  Defendant concedes that he returned on September 4, 2007 and wrote on the pavement after he had been told on August 30 to stop this conduct.

Thus, defendant certainly failed to obey the direction of authorized federal personnel to stop writing on the pavement. The court will now consider whether that order was "lawful" and whether defendant can be found guilty of "damage" to federal property. This analysis will incorporate the arguments in the defendant's motion to dismiss.

1. **"Damage" to Property**

The first federal regulation that defendant has been charged with violating states in relevant part, "All persons entering in or on Federal property are prohibited from – . . . (b) Willfully destroying or damaging property". 41 C.F.R. § 102-74.380(b). The second section that defendant has been charged with violating provides specifically that "[p]ersons in and on property must at all times comply with . . . the lawful direction of Federal police officers and other authorized individuals." *Id.* § 102-74.385.

Defendant takes issue with the interpretation of one word in each of the above regulations. Defendant argues that as a matter of law, he did not "damage" property and that because the act of writing on the pavement was not "illegal," the direction of the federal officers to stop did not constitute a "lawful" direction under the regulation. In support of his first argument, defendant cites *Mackinney v. Nielsen*, 69 F.3d 1002 (9th Cir. 1995). The court in *Mackinney* stated that "[n]o reasonable person could think that writing with chalk would damage a sidewalk." *Id.* at 1005.

First, the court would point out that *Mackinney* was a civil rights case, and the court was determining whether there had been probable cause to arrest the plaintiff. The problem in *Mackinney* was that the statute under which the plaintiff was arrested

6

made it illegal to "'(1) deface with paint or any other liquid,' (2) damage or (3) destroy . . . property that is not one's own." *Id.* Since chalk was not paint or other liquid, the plaintiff in *Mackinney* would have to have been arrested under the "damage" subsection of the statute. The court then stated that no "reasonable person" could think that writing on the sidewalk with chalk would "damage" the sidewalk. *Id.*

Subsequently, the California statute was amended to prohibit ***defacing*** with "graffiti or other inscribed material", damaging, or destroying any real or personal property. CAL. PENAL CODE § 594 (2007). Thus, in 2000, a juvenile defendant was found guilty of the same vandalism statute, notwithstanding that he wrote on glass with marker pen that could simply have been wiped away. *In re Nicholas Y*, 85 Cal. App. 4th 941 (2000), *review denied*, 2001 Cal. LEXIS 2457 (Cal. April 11, 2001). Although the defendant in *Nicholas Y.* cited *Mackinney*, the California court specifically mentioned the amendment, and stated that the definition of "deface" did ***not*** incorporate an element of permanence. *Id.* at 944.

The Government argues that the court should not adopt the Ninth Circuit view because other state and federal courts, including the Southern District of New York have held that provisions prohibiting "defacement" could constitutionally be construed as prohibiting chalking on a public sidewalk. *See Lederman v. Giuliani*, 98 Civ. 2024, 2001 WL 902591, *6-7 (S.D.N.Y. Aug. 7, 2001), *aff'd*, 2003 WL 21664300 (2d Cir. July 15, 2003). The Administrative Code sections in *Lederman* specifically prohibited writing, painting, drawing, or marking "of any type." *Id.* at *6 n.4. Clearly, writing with chalk, whether or not the writing is easily removable fits

7

within the prohibition of the Administrative Code sections cited in *Lederman.*

In this case, although Government counsel is correct in his statement that chalking a sidewalk can be interpreted as "***defacement***," the regulation under which this defendant has been charged does ***not*** prohibit "defacement." Government counsel then cites cases and statutes from various other states, arguing that defacement of property is the equivalent of damage to property. Because there appears to be no definition of "damage" in the Code of Federal Regulations, rather than looking to the law of other states, this court finds that it should look to New York State law for the appropriate definitions.

There are two relevant sections of New York law that are helpful in this analysis. New York State has statutes prohibiting various degrees of Criminal Mischief. N.Y. PENAL LAW §§ 145.00-145.12. One of the subsections of Criminal Mischief, Fourth Degree prohibits intentionally damaging the property of another person. *Id.* §145.00(1). A separate section of New York law prohibits "making graffiti" which involves "etching, painting, covering, drawing upon or otherwise placing of a mark upon public or private property with intent to damage such property." *Id.* 145.60.

In *People v. Collins*, 288 A.D.2d 756, 758, 733 N.Y.S.2d 289 (3d Dep't 2001),[2] the court stated that although there was no statutory definition of damage to property, it is commonly recognized that the term contemplates injury or harm to property that

---

[2] Leave to appeal was denied in *People v. Collins*, 97 N.Y.2d 752, 742 N.Y.S.2d 612, 769 N.E.2d 358 (2002).

decreases its value or involves loss of efficiency, and that only "slight" damage must be proved. In *In re H.*, the Appellate Division found no evidence of actual damage when a boy chalked obscenities on a neighbor's driveway. *In re H.*, 32 A.D.2d 932, 303 N.Y.S.2d 823 (2d Dep't 1969). Although there was a strong dissent in *In re H*, the holding was not affected.

The New York Criminal Practice Commentaries state that the damage inflicted should have some degree of permanency. N.Y. Crim. Practice Commentaries 6-62, § 62.03(2). In *People v. Torres*, 184 Misc. 2d 429 (N.Y. Cty. 2000), the court held that applying glue and paper to a surface which is not part of the original material, changes the surface and therefore, has the potential to reduce its value and perhaps result in some loss of use even if the glue was water soluble. *Id.* at 435-36.

In *People v. Vinolas*, 174 Misc. 2d 740, 744, 667 N.Y.S.2d 198 (Crim. Ct. NY Cty. 1997), defendant was charged, with among other things, Criminal Mischief, Fourth Degree for posting advertisements on a wall without permission. Although the court did not dismiss the criminal action at the pleading stage, the court noted that whether the defendant "intended" to cause damage was a question for the jury. *Id.* at 745. In a footnote, the court stated that "[a]rguably, the owner suffers damage, even where the damage is easily repaired. It is reasonable to assume that the restoration of the property to its original state, no matter how slight the damage, will have a cost in effort and/or money." *Id.* at 744 n.1.

Based on a comparison to New York Law, this court finds that the proof did not show that defendant's actions in this case "damaged" the property, even though the

plaza was "defaced" by the use of chalk. As stated above, the regulation does not prevent "defacing" property, and it has been held in various cases that defacing and damaging are not necessarily the same. It is clear that although defendant intended to write in chalk on the plaza, he did not intend to "damage" the surface. Therefore, this court finds that defendant did *not* violate 41 C.F.R. § 102-74.380(b) on either August 30 or September 4, 2007.

### 2.    "Lawful Order"

However, defendant's argument that he did not violate 41 C.F.R. § 102-74.385 is *completely meritless*. Defendant claims that he was not doing anything illegal and therefore, the officials direction to stop writing was not "lawful." Defendant makes a *baseless assumption* that in order for an order to be "lawful" the defendant's actions must have been "illegal." First, the court would point out that simply because the regulation with which defendant was charged did not provide for defacing property, this does *not* mean that his actions were "legal," that the defendant is free to write in chalk all over the federal plaza, or that the officers' directions to cease writing were not "lawful."

The First Amendment does not guarantee the right to communicate one's views at all times, places, and in any manner that the defendant desires. *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 647 (1981). This defendant is well aware that even activities protected by the First Amendment are subject to reasonable time, place and *manner* restrictions. *Id.* The Second Circuit's decision in this defendant's appeal of a prior conviction stated the same principles. *United States v. Murtari*, 120

Fed. Appx. 378, 380 (2d Cir. 2004).

Time, place and manner restrictions even in a public forum are valid if they are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication of the information. *Hobbs v. County of Westchester*, 397 F.3d 133, 149-50 (2d Cir. 2005)(citations omitted).  The fact that defendant may have a right to stand and hold a sign outside of the Federal Building does *not* give him the First Amendment right to write on the plaza in chalk or with any other medium, permanent or otherwise. *See People for the Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 318 (S.D.N.Y. 2000)(the fact that a speaker may address an audience from a the platform of a public monument would not confer upon the speaker the right to paint a message on that monument or to "readorn" with graffiti property owned by the Government or another person).

The message that defendant was attempting to write in this case is not relevant to this issue, and in fact, shows that the order to stop writing was content-neutral. There is a substantial governmental interest in protecting public and private property from damage. *People v. Vinolas*, 174 Misc. 2d 740, 746, 667 N.Y.S.2d 198, 201 (N.Y. Cty. 1997).  The fact that this defendant did not "damage" the property does not make the officers' order invalid.  The officers do not have to wait for the property to be damaged before asking the defendant to stop writing on it.  The fact that states have enacted laws banning graffiti regardless of the lack of damage, shows that graffiti is *not* a generally accepted medium of "speech" on public or private property.  The Supreme Court has held that a city has a substantial interest in promoting esthetic

values. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984).

Since the officers were justified in directing defendant to stop writing on the plaza, regardless of the content of his message, their orders were "lawful." The evidence at trial showed that defendant failed to obey the officers' lawful direction on *two occasions.* Thus, there is proof beyond a reasonable doubt that defendant violated 41 C.F.R. § 102-74.385.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the Defendant is found, **GUILTY** of Counts 2 and 4 of the superseding information, and it is

**ORDERED**, that his motion to dismiss Counts 2 and 4 of the superseding information is **DENIED,** and it is

**ORDERED,** that Defendant is found **NOT GUILTY** of Counts 1 and 3 of the superseding information.

Dated: October 16, 2007

*[signature]*
Hon. Gustave J. DiBianco
U.S. Magistrate Judge